35 C.C.P A.(Patents)
## APPLICATION OF HORVITZ.
### Patent Appeal No. 5465.

Court of Customs and Patent Appeals.
June 1, 1948.

Patrick J. Whelan, of New York City (J. G. McKean, of Oakland, Cal., Edward J. Mahler, of Westfield, N. Y., and W. F. Weigester and Edwin M. Thomas, both of Washington of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (J. Schimmel, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and HATFIELD and JACKSON, Associate Judges.

JACKSON, Associate Judge.

Appellant appeals from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner rejecting claims 17, 21, and 22 of an application, serial No. 263,750, filed March 23, 1939, entitled "Exploration by Soil Analysis." The claims were rejected as being unpatentable over the issues of and on the ground of estoppel arising out of the abandonment of contests by the appellant in two interferences, Nos. 78,304 and 79,340. Ten claims were allowed.

Claim 17 appears to be illustrative of the subject matter and reads as follows:

"17. A method of exploration for oil, gas, and related deposits which are subject to leakage of diffusible constituents therefrom, which comprises collecting soil samples near the surface at laterally spaced points over the area to be explored, extracting from each sample, with the same solvent and under comparable conditions, a petroleum derived wax-like substance soluble in carbon tetrachloride, and determining the relative amounts of such substance extracted from the respective samples whereby the amounts so determined for the several samples may be correlated with sample locations to yield data useful in locating the deposits sought for."

The application relates to geochemical prospecting of ground for the purpose of locating petroleum bearing deposits beneath the surface of the earth without drilling. Broadly speaking, such methods are in use, many of which include analyses of soil samples taken from spaced points over land which is being investigated for some constituent, the strength or concentration of which varies according to its proximity to an oil deposit. It is said that significant constituents may seep upwardly from an oil deposit or that they may be normal constituents of the soil where the concentration over an oil deposit varies. A comparison of the sample contents of the selected constituent extracted from the samples indicates the probable location in which to sink an oil well. The constituent

recited by appellant is called "soil wax", which is said to be a wax-like substance, whose definite composition appears to be unknown. The samples are treated with an organic solvent, such as carbon tetrachloride, for the purpose of removing therefrom all of the soluble organic matter leaving the sought material, which is then treated with a mineral acid, such as hydrocloric acid, which it was originally considered would render the wax material soluble in solvents for organic material. After treatment with mineral acid, the substance is treated with an organic solvent, such as carbon tetrachloride, and results in a yellowish-orange waxy substance. After evaporation, the residue of the various samples is expressed in percent weight. The varying results are then plotted on a map and contours drawn in order to determine their differences on the ground which has been prospected. It is said that the wax, by suitable treatment, is separable into two components referred to by appellant and called A-wax and B-wax.

The patents relied on were involved with the present application in the interferences hereinbefore mentioned, and are as follows: Smith 2,312,271 February 23, 1943; Dunn 2,320,577 June 1, 1943.

The patent to Smith discloses a method of locating subterranean petroleum deposits. It comprises taking samples from the soil surface, treating the samples with a weak solution of hydrochloric acid, and then extracting the non-gaseous hydrocarbon contents by means of carbon tetrachloride as a solvent.

The Dunn patent relates to geochemical prospecting, particularly to a method thereof, which involves the sampling of soils and the determination in surface soils of waxes which, it has been found, are correlated with the presence of deep-seated petroleum deposits. The process discloses the obtaining of soil wax by direct extraction thereof from the samples with a solvent, preferably pentane and without the intermediate acid treatment of appellant's process. In the process of the patent the solvent is evaporated and determination of the amount of soil wax is made by weighing.

It appears that on January 8, 1938, appellant filed an application, serial No. 183,-959, for a patent, entitled, "Exploration by Soil Analysis." While that application was pending, on March 23, 1939, he filed the instant application, serial No. 263,750, with the same title. On November 13, 1939, appellant filed a third application, serial No. 304,139.

The present application of appellant was involved in an interference No. 77,335, with the application of the Smith patent, hereinbefore mentioned. Appellant, who was the senior party, moved to dissolve the interference on the ground that the counts thereof were not supported by the Smith application. The motion was denied, and the party Smith subsequently abandoned the contest under rule 107 of the Rules of Practice, U. S. Patent Office, 35 U.S.C.A. Appendix. The interference was thereupon dissolved, as provided by that rule, and the counts thereof appear in appellant's here involved application as allowed claims 15 and 16.

The same Smith application was involved in Interference No. 78,304, running concurrently with Interference No. 77,335. In the former of those two interferences, there was also involved the application of the Dunn patent hereinbefore mentioned, and the last application of appellant, No. 304,139. In that interference, the senior party was Smith, the intermediate party was appellant, and the party Dunn was the junior party. During the motion period, appellant moved to shift the burden of proof, relying upon his application, No. 183,595, which was subsequently abandoned. The party Dunn filed a motion to dissolve the interference, a motion to amend under rule 109, and a motion to set up an interference between himself and appellant on commonly disclosed subject matter. Appellant's motion to shift was denied, as was the motion of the party Dunn to dissolve. The motion of Dunn to amend was granted as to one count and his motion to set up a separate interference, which became Interference No. 79,340, was granted.

In denying appellant's motion to shift the burden of proof, the examiner held that application No. 183,595 did not support the

counts. In a subsequent decision on a request for reconsideration of appellant's motion, appellant's present application was considered. The examiner denied that request in the following language:

"Application 263,750 states 'The substance sought as it exists in the soil is insoluble in common organic solvents' (page 4, lines 10-11). Even with the omission suggested by counsel, the required steps include a solubilizing leach with acid, and then extraction of the residue with the carbon tetrachloride type of solvent. The language of the count requires 'extracting from *said* samples *the* solid—constituents which *are soluble* in carbon tetrachloride.' The quoted language does not include the process disclosed in 263,750."

After another count had been added, responsive to the said motion of the party Dunn, in Interference 78,304, appellant abandoned the contest. Thereupon the interference was dissolved so far as appellant was concerned, but continued between the other two parties and resulted in priority of invention of the two counts of that interference being awarded to the party Smith. Those became the two claims of the Smith patent.

The third interference, 79,340, which was set up in response to the motion of the party Dunn in Interference No. 78,304, involved the party Dunn and appellant. That interference was dissolved upon the filing by appellant of a notice to abandon the contest and the count of that interference appears as claim 4 of the Dunn patent above noted.

Claim 1 of the Smith patent reads as follows:

"1. In the art of geological exploration, the method of locating petroleum deposits which comprises systematically collecting a series of samples of surface soil at spaced locations, extracting from said samples the solid, petroleum derived constituents which are soluble in carbon tetrachloride, measuring the relative amounts of said constituents and tabulating said measurements with respect to the original location of the samples."

It may be remembered that appellant abandoned the contest of Interference No. 78,304, the counts of which became the claims of the Smith patent. The examiner took the position that the claims on appeal are so similar to count 1, that appellant is in fact contending for subject matter as to which he abandoned the contest and in the opinion of the examiner there was no material distinction between claim 1 of the Smith patent, above noted, and involved claim 17. The Board of Appeals agreed with that reasoning of the Primary Examiner.

When appeal claim 17 and claim 1 of the Smith patent are examined there can be no question that each defines steps of collecting samples of surface soil from spaced locations over the area being prospected; that both the appealed claim and the patent claim recite the step of extracting a petroleum derived constituent, soluble in carbon tetrachloride; that the amount of such constitutent is determined; and that such amounts of the constituent as are derived from the samples are utilized to indicate the presence or absence of subterranean petroleum deposits.

It will be noticed that the involved claim 17 differs from the said patent claim 1 in that claim 17 recites the step of "extracting from each sample, with the same solvent, and under comparable conditions, a petroleum derived wax-like substance soluble in carbon tetrachloride." It is contended by appellant that such difference was interpreted by the examiner in Interference No. 78,304 with respect to count 1, hereinbefore quoted from, in such a way as not to be supported by the disclosure of the herein involved application.

Appellant's contention is that, because the language of claim 1 which when it appeared as an interference count, had been interpreted by the examiner as not supportable by the disclosure of the involved application, the board erred in interpreting such patent claim as though it did not contain the wording which was emphasized by the examiner, hereinbefore quoted, as his interpretation of the count. It appears that the Primary Examiner, who denied appellant's motion to shift, is the same examiner who denied patentability to the rejected claims herein. However, we can see no reason why his decision in Interference No. 78,304 has the effect of a final judgment

under circumstances such as are here shown, or that it is of such force as to bind the Board of Appeals.

Appellant was not compelled to accept the construction given the count in the interference by the examiner. The decision on the motion to shift the burden of proof does not necessarily conclude an interference proceeding in which the priority rights of the parties are determined. A review of such decision may be had at final hearing by the Board of Interference Examiners. The acquiescence by appellant in the holding of the examiner in Interference No. 78,304 can not, in our opinion, by any proper reasoning, preclude review of such question when the matter has been presented to the proper tribunal. Appellant did not seek such review before the Board of Interference Examiners and the decision of the Board of Appeals in this proceeding is the first opportunity by a proper tribunal of the Patent Office to pass upon the meaning of the interference count in controversy, when such count appears as an allowed claim.

As is quite obvious, appellant in his involved application and the patentee Smith in his specification disclose the same process steps. Both, as was clearly stated by the board, disclose a modification of the soil samples by an acid or like treatment prior to the extraction step. That statement has not been challenged by appellant. Therefore, it can not be held in view of such similarity, that claim 1 of the Smith patent excludes preliminary acid treatment.

In our opinion claim 1 of the Smith patent is broad enough to cover the process defined in claim 17. Certainly another patent for the same broad process can not be issued.

Appellant does not contend that rejected claim 17 can be considered patentable if the board's interpretation of claim 1 of the Smith patent is proper. Such contention could not properly be made in that event because rejected claim 17 and claim 1 of the patent would be directed to an identical process.

It may be noted that the process recited in claim 1 of the Smith patent "comprises" the recited operations in the claim. In patent parlance, the term "comprises" is inclusive. In re Cone, 121 F.2d 470. 28 C.C. P.A., Patents, 1282. Therefore, it necessarily follows that claim 1 properly covers a method which includes preliminary acid treatment as well as a process without such treatment.

It has not been contended that any of the rejected claims contain limitations which would render them patentably distinct from the other claims on appeal and since they all stand or fall together, there is no necessity for separate treatment of them.

In abandoning the contest in interference 78,304, appellant in effect confessed judgment of priority of invention of the subject matter of the count thereof, which is claim 1 of the Smith patent. In view of what we have said herein, it is unnecessary to discuss Interference No. 79,340.

Since we are in thorough accord with the decision of the Board of Appeals, that the rejected claims are unpatentable over the issues of Interference No. 78,304, it is unnecessary to discuss the ground of estoppel arising out of the abandonment of the contest in interferences 78,304 and 79,-340.

For the reasons hereinbefore set out, the decision of the Board of Appeals is affirmed.

Affirmed.

By reason of illness, O'CONNELL, Judge, was not present at the argument of this case and did not participate in the decision.

35 C.C.P.A.(Patents)
### Application of WILLIAMS.
### Patent Appeal No. 5500.

Court of Customs and Patent Appeals.
June 1, 1948.

